**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NICHOLAS DINIZO, | Civil Action No. 07-cv-5327 (PGS) |
| Plaintiff, | |
| v. | **OPINION** |
| THE TOWNSHIP OF SCOTCH PLAINS, | |
| Defendant | |

Plaintiff Nicholas DiNizo ("Plaintiff") is an employee of the Township of Scotch Plains ("Township") Department of Public Works and Recreation ("DPW"). Defendant Thomas E. Atkins ("Atkins") was the Municipal Manager. Plaintiff filed this suit in the Superior Court of New Jersey in Middlesex County. Defendants removed the suit to this Court based upon Plaintiff's claim for alleged violations of his First Amendment rights. Plaintiff alleges three causes of action in his Complaint: (1) violations of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.*; (2) violations of the New Jersey Conscientious Employment Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.* and New Jersey common law; and (3) that Defendants chilled Plaintiff's First Amendment rights and constituted "patronage bias" against Plaintiff. Plaintiff seeks compensatory and punitive damages as well as attorney's fees, interest, and costs. Defendants move for summary judgment on all counts.

I.

As stated above, Plaintiff is an employee of the Township in the DPW, who reported to Charles E. Cerami ("Cerami"), director of the DPW of Scotch Plains. In turn, Cerami reported to Atkins. Atkins was the Municipal Manager of the Township. Atkins retired in September 2008.

On or about January 18, 2006, Atkins hired Cerami to be the director of the DPW. Previous to that position, Cerami had been the Director of DPW of Clinton Township, Hunterdon County.

On March 2, 2006, Atkins became aware through a newspaper article that Cerami was under investigation by the Hunterdon Prosecutor's Office about his Clinton Township job. The Hunterdon County Democrat's headline read "Clinton Township DPW is Under Investigation." The article does not accuse Cerami of any wrongdoing; but the newspaper story states that the prosecutors are "investigating complaints against the Department of Public Works." As a result, the Township's officials mandated that its Chief of Police open a line of communication with the Hunterdon County Prosecutor's Office so the Township could ascertain if the allegations in the Hunterdon County Democrat affected DPW Director Cerami. At the same time, Atkins interviewed Cerami about the article. After the interview, Atkins apprised the Township Council the he spoke with Cerami, and Cerami confirmed that he was not directly involved in any impropriety in Clinton.

For the next several months, Scotch Plains moved its business forward without upheaval.

On August 18, 2006, things dramatically changed. Atkins received a letter from "Scotch Plains DPW Employees" regarding DPW Director Cerami.[1] The letter asserts that Cerami created a hostile work environment. The letter reads:

---

[1] Scotch Plains Council was copied on the letter.

> We write to inform you of the hostile work environment created by Public Works' Director Charles Cerami. His language is often demeaning and abusive, including racial and ethnic slurs. Furthermore, his uncivil conduct and condescending manner have significantly depressed morale.
>
> We have tried to be friendly and conversational with Director Cerami. Yet, in the past six months, the Director has not made any attempt to befriend his employees and has been utterly unconcerned with anyone's opinion but his own.
>
> Most of these employees have been long-time friends. But what was once a tight unit has split apart into a group of people with quickened tempers who find the jobs they enjoyed for long to be unbearably stressful.
>
> As council should be aware, Director Cerami has been investigated for the exact same hostile behavior as well as for other egregious misconduct during his previous employment with another township (See article attached).[2]
>
> We are all talented, hardworking, and dedicated township employees. None of us deserved to be so badly mistreated, and we will no longer endure it. We want his bullying and browbeating to stop immediately. Finally, we ask the council to request Director Cerami's resignation.
>
> We request council address these issues during its next meting which we will be attending. If necessary, we'll also contact the NJ Dept. of Personnel and the Equal Employment Opportunity Commission.

Although it is not stated in the letter, Cerami is accused of referring to DPW employees as "wops," "guineas," "pork chops," and African-American employees by the "N-word".

On August 19, 2006, Atkins followed-up on the letter. His first inquiry was to identify the writers of the August 18 Letter rather than the anonymous sender – "Scotch Plains DPW Employees." Atkins met with Earl Jackson, a director of DPW, and ordered him to investigate the

---

[2] The article is the one referred to in the Opinion at p. 2.

charges within the letter. At first, Jackson's investigation failed to turn up anything,[3] and on August 21, 2006, Jackson wrote to Atkins concluding "most employees were not aware nor in agreement with this letter, therefore, the letter was not a true representation of the DPW employees." Mr. Jackson concluded the August 18 Letter should be disregarded.

On August 28, 2006, a reporter for the Scotch Plains-Fanwood Times received a copy of the August 18 Letter, and the reporter called Atkins about same.

On September 18, 2006, Atkins wrote to Plaintiff about that August 18 Letter, although it is not clear what the reason was. Atkins reported on the Jackson investigation and outcome, and how the August 18 Letter was distributed to the local press. Atkins was concerned about the defamation of Cerami's character and the disservice to employee moral and the "good men and women in our department."

Soon thereafter, Plaintiff met with Atkins and Plaintiff admitted that he wrote the August 18 Letter and he had given a copy to one of the democrats running for Township Council. Thereafter on October 6, 2006, Atkins served a "Preliminary Notice of Disciplinary Action" upon Plaintiff on three separate charges. They were insubordination, conduct unbecoming a public employee, and "other sufficient cause." The charges concern Plaintiff's August 18 Letter which contained allegations by an unknown signator at the time of release, and were distributed outside the chain of command.

---

[3] It may have been misconceived because the interviews of the employees included Jackson, two union representatives, and Mr. Cerami. Any lack of candor was probably reasonable since Cerami was present.

At some point in October 2006, the controversy crossed over into the municipal election. The democrats attacked Atkins as someone they would fire due to his hiring of Cerami. The democrats' campaign mailer stated in part:

> WOULD YOU HIRE THE HEAD OF THIS DEPARTMENT?
> By Curtis Leeds - Clinton Twp 3/27/2006
>
> Clinton Twp. - The County Prosecutor's Office is investigating complaints against the township's Department of Public Works. The complaint describes an atmosphere where township vehicles, facilities and personnel are used for non-township work, such as the restoration of a boat trailer or repairing cars.
>
> SCOTCH PLAINS TOWNSHIP MANAGER TOM ATKINS DID!

In reply, the republicans,[4] supported Atkins as Township Manager and faulted the democrats' position.  The Observer declared, in part:

> Republican candidates for Township Council, Nancy Malool, Carolyn Sorege, and Rich Duthie issued a statement early on in the campaign that Tom Atkins has their full confidence and support and would continue on as Municipal Manager if they are elected.  By contrast, the Democrats immediately issued statements and mailers that hurled baseless accusations against Atkins and went as far as accusing him of suspending an employee for six months when it never happened, by passing an employee for promotion based on race which the employee has since refuted, and hiring an employee that was under criminal investigation which was also untrue.  The Democrat campaign has yet to offer an apology for promulgating these lies.
>
> As rumors of Atkins' firing by the Democrats gained steam, other employees were rumored to be in the Democrats' cross hairs including CFO Lori Majeski, Recreation Director Ray Poerio, Fire Chief Jon Ellis, and Police Chief Brian Mahoney. Marks added, "I have been around for a while and this seems to be the wildest political strategy I've ever seen on the municipal level. It seems like the Democrats want to send our municipal government into utter chaos.

---

[4] In the Scotch Plains Observer newsletter.  The Observer did not disclose the source of the publisher but it looks like a republican campaign mailer.

On October 13, 2006, Atkins sent a proposal to Plaintiff in an effort to resolve the disciplinary charges. Plaintiff rejected the resolution.

On September 5, 2006, Atkins attempted to manipulate the public discourse. He requested two union representatives John Caffrey and Frank Dinizio (Plaintiff's brother) to sign a letter (Atkins drafted) to the editor of the Scotch Plains Fanwood times (Editor Letter) regarding the politics of the August 18 Letter, and the Hunterdon Democrat newsarticle. The union leaders declined. The Editor Letter addressed the "political campaign release." The Editor Letter clarified some misfacts including that no employee was suspended for six months and there was no "plummeting morale" in the DPW. Moreover, the Editor Letter discussed Mr. Cerami, and it concluded that DPW workers "needed [more] time to get to know Mr. Cerami better." Finally, it found Atkins to be "fair, impartial and honest in dealing with the union" and "hope[d] that the political campaign season concludes quickly" in order to calm down the hyperactivity.

In November 2006, Atkins and Jackson met. At that time, Jackson advised Atkins that he planned on retiring in early 2007. His retirement would open up a supervisor's position.

In December 2006, the Hunterdon Prosecutor indicted Cerami for theft of scrap metal from Clinton. As a result, Cerami took a leave of absence without pay from the Township.

In January 2007, Plaintiff refused to dump scrap metal into a bin because the procedure to discard it was different from the previous disposals. Plaintiff refused because outsiders were entering the work area and loading the scrap metal into their vehicles for their own use. This was not in accord with the prior practice where DPW sold the scrap metal and the monies were placed in an employee "sunshine fund."

Immediately thereafter, Jackson recommended that upon his retirement two assistant public works supervisors be added to DPW. Jackson recommended Messrs. Grausso and McCoy for those jobs. On January 18, 2007, Atkins accepted those individuals and provisionally appointed them to the position of supervisor. Plaintiff was upset he was not promoted.

After these appointments, Plaintiff did not receive overtime as he had in other years. His loss was approximately $7,000. Defendants argue that Plaintiff had removed his name from the list.

Thereafter, four persons competed for the open supervisor positions that were provisionally awarded to Grausso and McCoy. Each applicant, including Plaintiff, submitted information as part of the experience and equivalency criteria authorized by state employment practices for filling such positions. The scoring of the applications found that the applicants were tied, including Plaintiff. Under state personnel policy, when a tie occurs, the Township Manager is authorized to select the successful candidates. To Plaintiff's chagrin, Atkins chose Grausso and McCoy.

II.

**Summary Judgment**

    **A.**    **Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact, and that the evidence establishes the movant's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of fact exists only if a reasonable jury could return a verdict for the non-movant, and it is material only if it may affect the outcome of the suit based upon substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the

evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

After the movant has satisfied this burden, the non-moving party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.

There are a number of fact disparities. They include:

(a) testimony of Frank DiNizo (brother of Plaintiff) and union representative. His testimony with regard to Cerami's abusive comments vary between Defendant and Plaintiff;

(b) Atkins testified he acted solely within ordinary government procedures in disciplining Plaintiff; but his discussion with union representatives about writing the Editor Letter to the local newspaper is different. It shows political motivation rather than compliance with governmental procedures, hence, his subsequent action may be analyzed by a jury from that perspective;

(c) In the investigation of the August 18 Letter, Jackson found that none of the DPW employees knew of the August 18 Letter and it should be disregarded. In contravention, Plaintiff states that the information was acquired from more than a few DPW workers prior to its release;

(d) Defendants allege that prior to the August 18 Letter, the only complaint about Cerami involved requiring DPW employees to pave a road on a hot day. On the other hand, Plaintiff

contends that prior to the August 18 Letter, he had complained to supervisors about Cerami with regard to his abusive language; and

(e)  With regard to the scrap metal claim, Defendants allege that Plaintiff "never put his suspicions in writing and never spoke to anyone" about the variation of disposal of scrap metal, by Scotch Plains DPW employees. To the contrary, Plaintiff asserts he complained to Bill Richardson and Earl Jackson about same.

With such numerous facts in dispute summary judgment is inappropriate. The motion for summary judgment is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

October 19, 2009