# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS DINIZO<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>THE TOWNSHIP OF SCOTCH PLAINS<br>AND THOMAS E. ATKINS,<br><br>　　　　Defendants. | Civil Action No.: 07-05327(PGS)<br><br>MEMORANDUM AND ORDER |

The Township of Scotch Plains (Township) seeks an Order for judgment on a matter of law (Fed. R.Civ. P. 50(b), or alternatively a new trial.

At the jury trial, the Court instructed the jury on several causes of action including creation of a hostile work environment (LAD) against the Township, retaliation by the Township for Plaintiff's engagement in protected activity under the LAD, and retaliation by Mr. Atkins for Plaintiff's political affiliation under § 1983. The jury found no cause of action on two of the three counts; but on Count Two - retaliation by the Township against Plaintiff, the jury awarded Mr. Dinizo $1,500.00 for emotional distress, and nothing for economic loss.

The Jury Verdict Sheet reads in pertinent part:

## LAW AGAINST DISCRIMINATION - RETALIATION

3.　Do you find that the Township of Scotch Plains retaliated against the plaintiff for engaging in protected activity under the LAD?

　　Answer:　　Yes __X__　　　No_____

[If your answer is "Yes" proceed to Question 4. If your answer is "No", skip Questions 4 and 5 and proceed to Question 6.]

4. What amount of damages, if any, do you award the plaintiff for emotional distress caused by retaliation against him for engaging in protected activity under the LAD?

   Answer:   $1,500.00

5. What amount of damages, if any, do you award the plaintiff for economic loss caused by retaliation against him for engaging in protected activity under the LAD?

   Answer:   $ 0

The facts leading to that jury finding are briefly set forth below.

On August 18, 2006, Thomas Atkins, manager of Scotch Plains, received a letter from "Scotch Plains DPW Employees" regarding DPW Director Cerami. The letter asserts that Cerami created a hostile work environment. In part of the letter, Cerami is accused of referring to DPW employees as "wops," "guineas," "pork chops," and African-American employees by the "N-word".

On August 19, 2006, Atkins followed-up on the letter. His first inquiry was to attempt to identify the writers of the August 18 Letter rather than the anonymous sender – "Scotch Plains DPW Employees." Atkins assigned Earl Jackson, a director of DPW, to investigate the charges within the letter. At first, Jackson's investigation failed to turn up much, and on August 21, 2006, Jackson wrote to Atkins concluding "most employees were not aware nor in agreement with this letter, therefore, the letter was not a true representation of the DPW employees." Mr. Jackson concluded the August 18 Letter should be disregarded. On August 28, 2006, a reporter for the Scotch Plains-Fanwood Times received a copy of the August 18 Letter, and the reporter called Atkins about same. On September 18, 2006, Atkins wrote to Plaintiff about that August 18 Letter. Atkins reported on the Jackson investigation and outcome, and how the August 18 Letter was distributed to the local press. Atkins was concerned about the defamation of Cerami's character and the disservice to employee morale and the "good men and women in our department."

Soon thereafter, Plaintiff met with Atkins, and Plaintiff admitted that he wrote the August

18 Letter and he had given a copy to one of the democrats running for Township Council. Thereafter on October 6, 2006, Atkins served a "Preliminary Notice of Disciplinary Action" (PNODA) upon Plaintiff on three separate charges. They were insubordination, conduct unbecoming a public employee, and "other sufficient cause." The charges concern Plaintiff's August 18 Letter which contained allegations by an unknown signator at the time of release, and were distributed outside the chain of command. The PNODA sets forth the disciplinary action that may be taken. It states that "suspension for 180 days, beginning 10/11/06 and ending 4/10/07" as well as "removal, effective . . . immediately." At the bottom of the PNODA, it advises "your health coverage may be affected by this action."

II.

The issue which arises here is that the LAD requires the Plaintiff to show some type of adverse employment action to sustain his burden. Although the PNODA asserted the potential maximum punishment, the charges in the PNODA were dropped in December 2006, and no actual punishment occurred.

In order to show an adverse employment action, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'disuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern v. White*, 548 U.S. 53, 68 (2006) (internal cites omitted). Despite the Township's protestations about more deliberative action being necessary, it is reasonable that the 180 day suspension plus reference to loss of medical insurance as set forth in the PNODA is sufficient to meet the *Burlington Northern* standard. As such, the Township's motion for reconsideration is denied.

IT IS on this 16th day of March, 2010;

ORDERED that Defendant, Township of Scotch Plains' motion for judgment on a matter of law or alternatively for a new trial is denied.

_____
PETER G. SHERIDAN, U.S.D.J.